IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANET R. HEMMINGER,

               Plaintiff,

                                                 OPINION AND ORDER

v.

                                                  08-cv-186-bbc

MICHAEL ASTRUE,
Commissioner of Social Security,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of an adverse decision of the commissioner of Social Security brought under 42 U.S.C. § 405(g). Plaintiff Janet R. Hemminger seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the judge did not properly assess her credibility, did not properly consider the opinion of her treating physician, did not properly address her mental limitations and did not make a proper step five determination. I agree

1

with plaintiff on all counts. Accordingly, I am remanding the case to the agency for additional proceedings.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background and Medical Evidence

Plaintiff was born on October 5, 1959, graduated from high school and has a two-year degree in accounting. AR 17, 352. She has relevant work experience as an accountant and a truck driver. AR 44.

The record before the administrative law judge included plaintiff's medical records dating back to 1997, when plaintiff was employed as a bookkeeper. The records showed that plaintiff had been treated off and on over the years by Dr. David Bjarnason, a rheumatologist, for pain in various parts of her body, including her right wrist, feet and calves. Bjarnason was unable to come up with a clear diagnosis for plaintiff's pain. Tests for inflammatory arthritis were negative. Plaintiff was treated with ibuprofen and Amitriptyline. At times, with Bjarnason's support, plaintiff would reduce her work hours or take a leave of absence from work if she was experiencing an exacerbation of her symptoms.

In October 1998, plaintiff had an increase in her left arm symptoms after moving about a cord of firewood from the ground to the bed of a pickup truck. She was diagnosed

2

with tendonitis and instructed to wear a splint and take ibuprofen as needed. However, on November 25, 1998, she told Bjarnason that she recently had been experiencing pain in both arms. Bjarnason noted some tenderness in the shoulders and elbows but no acute swelling or inflammation. He noted that the "only nonsteroidal [medication] she tolerates or has helped her is ibuprofen so I really cannot change that." AR 139. Plaintiff told Bjarnason she would like to take time off from work because that was the only thing that had seemed to help in the past. Bjarnason agreed and gave plaintiff a medical excuse from work for two months.

On January 29, 1999, Bjarnason extended plaintiff's leave for another month, noting that plaintiff had had increased pain in her arms after trying to do two hours of desk work for three days in a row. On examination, plaintiff had a lot of tenderness in both elbows but little in her wrists, hands, shoulders or lower extremities. On March 3, 1999, Bjarnason noted that plaintiff had been stable until three weeks previously, when she had had a flareup of "pain generally both muscle and joint." AR 149. Bjarnason noted some tenderness over the forearm muscles and the elbows. He indicated that plaintiff was "at a stage" where she should continue to take Amitriptyline and ibuprofen as necessary and work as tolerated. AR 149. He wrote a note to plaintiff's employer, stating that plaintiff was no longer able to perform her bookkeeping job. In fact, noted Bjarnason, it was doubtful whether she could

3

perform "any job activity that requires regular use of the arms, hands, at least on a realistic basis such as 4-8 hours a day." AR 149.

On September 9, 1999, Bjarnason noted that plaintiff had pain in her legs, arms and neck. Plaintiff reported that she had to pace herself at home, stating that her pain increased with vacuuming, driving and shopping. Bjarnason found that plaintiff had tenderness that was "very typical of fibromyalgia" when he pressed on various areas, including her mid back, hips, neck, shoulder and elbows. AR 163.

Plaintiff saw Bjarnason on May 18, 2000, at which time he noted that plaintiff had been "fairly stable." He noted that she still had her daily pain, but was able to function better, performing some light yard activities and working on the computer for brief time periods. He noted that she had her "ups and downs" with depression but that it was not steady or progressive. He indicated that he could see plaintiff on an as-needed basis. AR 181.

Plaintiff did not see Bjarnason from May 2000 until November 2004. In the interim, she received regular physicals and treatment for hyperlipidemia, abdominal bloating, difficulty sleeping and endometrial polyps. On various records, plaintiff's fibromyalgia symptoms were noted to be "stable." For example, Dr. Ewa Kubica saw plaintiff on May 5, 2004 for a general physical examination, at which time he noted that her fibromyalgia symptoms were "fairly stable." AR 221. Kubica encouraged plaintiff to exercise "to the best

4

of her capability" to help manage her lipidemia. At the conclusion of Kubica's note, he listed the following topics that had been "Discussed and Encouraged:" "Regular exercise using large muscle groups at least 4 days/week for a 30 minute duration per session;" seat belt use; avoidance of tobacco and alcohol use in moderation; adequate calcium intake through diet and supplements; and breast self-exam monthly. AR 221-23.

On November 26, 2004, plaintiff returned to see Bjarnason. He noted that plaintiff had been better for about a year after she had quit working but "[t]hen her symptoms worsened and over the last year this has all progressed." AR 242. Plaintiff now had daily pains throughout many muscle areas including her neck, shoulders, arms, hips and the lower extremities; joint pains in the hands, elbows, shoulders, knees, ankles and feet; and swelling in her hands and feet. She also reported feeling fatigued. Plaintiff said that she had good days and bad days and that on the bad days she could do very little. Bjarnason noted that plaintiff had not been able to get insurance since she stopped working. On examination, plaintiff was tender in many of the locations used to diagnose fibromyalgia. He increased plaintiff's dose of Amitriptyline and suggested she try Darvocet-N for pain. AR 242-45.

On November 30, 2004, plaintiff filed an application for Social Security Disability benefits, alleging that she had been disabled since November 25, 1998 because of fibromyalgia, tendonitis and arthritis. AR 43-44.

5

In April 2005, plaintiff saw Dr. Lori Remeika for a complete physical examination. Plaintiff did not report any new concerns, but the doctor noted that plaintiff had a past medical history of fibromyalgia, chronic pain and fatigue for which she saw Bjarnason. Remeika continued plaintiff on Lipitor for her hyperlipidemia.  She encouraged plaintiff to exercise to the best of her capability, even if it was only three 10-minute walks per day. Remeika's note concluded with the same list of "Discussed and Encouraged" topics that Kubica had listed on his note one year earlier, including regular exercise, seat belt use and breast self-exams.  AR 276-78.

On June 29, 2005, Bjarnason completed a questionnaire on which he answered several questions regarding plaintiff's condition.  He indicated that plaintiff met the American Rheumatological criteria for fibromyalgia and that her prognosis was poor.  He noted that plaintiff had multiple tender points, non- restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, premenstrual syndrome, numbness and tingling and dysmenorrhea.  He noted that she had bilateral pain in her lumbocsacral, cervical and thoracic spine, chest, shoulders, arms, hips and legs that was made worse by changing weather, cold, fatigue, hormonal changes, movement, static position and stress.  He found that plaintiff's symptoms constantly interfered with her attention and concentration and that she had a moderate limitation in the ability to deal with work stress. He reported that plaintiff was taking Amitriptyline, which made her drowsy.  AR 269-71.

6

Bjarnason concluded that plaintiff could walk for 15 minutes at a time, sit for 30 minutes and stand for 30 to 45 minutes at a time but could only sit, stand or walk for less than two hours in an eight-hour work day. He also found that she must walk around five minutes every thirty minutes and be permitted to take unscheduled breaks. He found that she could occasionally lift less than ten pounds, had significant limitations in doing repetitive reaching, handling and fingering and would be absent more than three times a month. He concluded that these limitations applied beginning in November 1995. AR 272-74.

### C. Consulting Physicians

On January 25, 2005, state agency physician M. J. Baumblatt completed a physical residual functional capacity assessment for plaintiff. He listed plaintiff's diagnoses as fibromyalgia, tendonitis and arthritis. He found, without explanation, that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and sit, stand or walk six hours in an eight-hour work day. AR 247-54. On April 7, 2005, this opinion was affirmed by a second state agency physician. AR 254.

On April 12, 2005, state agency psychologist Frances M. Culbertson completed a Psychiatric Review Technique Form for plaintiff and found she had an affective disorder, an anxiety disorder and a personality disorder. AR 255-68. Culbertson concluded that plaintiff

had no difficulties in the activities of daily living and mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. AR 265-66.

### D. Hearing Testimony

Plaintiff testified that she lived with her husband and that she had three grown children. AR 353. She testified that she had last worked in 1998 in the accounting department at St. Joseph's Hospital and that she had to lift boxes at that job. She had previously worked as a truck driver. AR 354-55. Plaintiff explained that she had quit working because her fibromyalgia was affecting her hands, arms and legs. AR 357.

Plaintiff testified that she had trouble sleeping because of the pain from her fibromyalgia. AR 358. She testified that she had good days and bad days. To alleviate her pain, she lay down or walked around. AR 359. She testified that she cooked, did laundry and light cleaning, shopped for groceries and keyboarded for 15 minutes at a time. AR 360.

Plaintiff testified that the level and frequency of her pain and symptoms had gotten worse over the previous couple of years. AR 363. She testified that she could walk for about only 15 or 20 minutes at a time. AR 364. She testified that activity made her pain worse. AR 367. She said that she had stopped taking the Darvocet prescribed by Bjarnason because it made her feel like a "zombie." AR 363. Plaintiff also testified that she had had mental health counseling many years ago earlier not recently. AR 371.

8

The administrative law judge called Dr. Paul R. Wiese, a psychologist, to testify as a neutral medical expert. AR 370. Wiese's testimony was very brief. He indicated that plaintiff "certainly does present as dysthymic though, kind of an ongoing, low grade depression" that was probably a reaction to her physical condition. AR 371. Rating plaintiff's functioning under the "B" criteria of the listings for affective disorders, he indicated that plaintiff had no restrictions of activity of daily living; "mild to moderate" limitations in social functioning; "mild to moderate" deficiencies or limitations in persistence, pace, and concentration; and no episodes of decompensation. AR 372.

Although plaintiff alleged in her disability application that she had been disabled since she stopped working in November 1998, plaintiff's lawyer stated at the hearing that plaintiff was amending her alleged onset date to July 1, 2003, because it was the "earliest, beneficial" date for her. AR 362. In response to questioning by the administrative law judge, plaintiff stated that she had filed two prior applications for social security disability, both of which had been denied. (The record contains no information pertaining to those prior applications.)

### E. The Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. 20 C.F.R. § 404.1520. At step

one, she found that plaintiff had not engaged in substantial gainful activity from July 1, 2003 through her last insured date of December 31, 2004. At step two, she found that plaintiff had the severe impairment of fibromyalgia that caused the symptoms of poor sleep, chronic pain and fatigue but that she had no severe psychological impairment. AR 14. The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

    The administrative law judge determined that plaintiff retained the residual functional capacity to perform sedentary to light work with an ability to lift 10 pounds frequently and 20 pounds occasionally and sit, stand or walk for six hours in an eight-hour work day, provided that she had the ability to change position from sitting to standing every half hour. In reaching this conclusion, the administrative law judge relied largely on the assessments by the state agency physicians, declaring that they were "essentially correct." AR 17. She rejected the opinion of plaintiff's treating physician, Bjarnason, finding that it was based upon plaintiff's subjective complaints and was inconsistent with clinic notes indicating that plaintiff's condition was stable and "would not be harmed by light to sedentary activity." Id. At step four, she found that plaintiff's limitations would prevent her from performing her past relevant work. AR 14-15.

At step five, the administrative law judge applied the Medical-Vocational Guidelines, often referred to as "the grids," to determine whether, in light of plaintiff's age, education, work experience and residual functional capacity, she could make a vocational adjustment to other work. Applying Rule 201.22 of the guidelines, the administrative law judge found that plaintiff would not be disabled if she could perform a full range of light work. Although she acknowledged that the rule provided only a "framework" for decision-making if plaintiff had nonexertional limitations, she found that plaintiff's additional limitations "had little or no effect on the occupational base of unskilled sedentary to light work." AR 18. Accordingly, the administrative law judge concluded that under the framework of the rule, plaintiff was not disabled.

## OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the

11

administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

Before turning to plaintiff's arguments, a general observation about plaintiff's briefs is in order. For the most part, they are poorly argued and lack focus. Plaintiff has peppered her brief with citations to numerous cases and regulations that address various aspects of social security disability law, but she often fails to develop any meaningful argument as to how the administrative law judge erred *in this case*. To give one example, within the section of her brief criticizing the administrative law judge's decision to reject the treating physician's opinion, plaintiff asserts that the administrative law judge "failed to consider SSR 96-7p that states, '[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental

12

stressors that would exacerbate the symptoms . . . [or that] the individual may be unable to afford treatment and may not have access to free or low-cost medical services.'" Plt.'s Mem. in Supp. of M. for Summ. J. or Remand, dkt. #8, at 19.  Plaintiff then moves on to another point, failing to offer any argument to support her suggestion that plaintiff either a) structured her daily activities to minimize her symptoms or b) could not afford treatment. Similarly, plaintiff makes a number of arguments concerning the administrative law judge's alleged failure to consider "the limiting effects of fibromyalgia," but she makes little effort to point to specific evidence in the record showing that she suffers from such effects. Plaintiff would have been much more effective if she had forgone her spaghetti-against-the-wall approach in favor of more selective, better developed arguments.

    In spite of this criticism, I agree with plaintiff that this case must be remanded.  My primary concern is the administrative law judge's failure to call a vocational expert to testify regarding the occupational impact of the requirement that plaintiff be allowed to change position from sitting to standing every half an hour, an argument that plaintiff makes with clarity.  (Plaintiff's other step five argument, that the administrative law judge erred by failing to specify how often she would need to change position, is meritless.  In the body of her decision, the administrative law judge explained that plaintiff would need to change position from sitting to standing approximately every half hour.)  Instead of calling a vocational expert, the administrative law judge reached her conclusion at step five of the

13

sequential analysis by relying on the Medical-Vocational Guidelines set forth in 20 C.F.R., Pt. 404, Subpt. P. App. 2. The guidelines reflect an analysis of vocational factors and residual functional capacity and are used to direct a conclusion of disabled or not disabled for individuals suffering solely from exertional limitations. 20 C.F.R., Pt. 404, Subpt. P. App. 2 § 200.00(a). However, when an individual has nonexertional limitations, the grids cannot be applied. 20 C.F.R., Pt. 404, Subpt. P., App.2, § 200.00(e). According to Social Security Ruling 83-12, a person who must alternate periods of standing and sitting is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work. The ruling goes on to state: "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." Id., pp. 3-4.

Although the administrative law judge acknowledged that she could rely on the grids only as a "framework" for decision-making if the claimant had nonexertional limitations, she made a conclusory finding that plaintiff's "additional limitations" would have "little or no effect on the occupational base of unskilled sedentary to light work." AR 18. She provided no support or explanation for this finding and the commissioner does not attempt to defend it. Instead, the commissioner argues that the failure of the administrative law judge to call

14

a vocational expert to assess the impact of the sit-stand limitation was harmless because the record does not support the need for such a limitation in the first place. To agree, however, I would have to make my own independent finding about plaintiff's limitations, which I am not permitted to do. Once the administrative law judge determined that the evidence supported the need for a sit-stand limitation, she was required to account for the effect that such a limitation would have on the relevant job base before concluding that plaintiff was not disabled. Her failure to do so is an error requiring remand.

On remand, the administrative law judge should also conduct a new evaluation of plaintiff's residual functional capacity. In rejecting both plaintiff's subjective complaints and Bjarnason's opinion regarding plaintiff's limitations and the severity of her condition, the administrative law judge relied heavily on clinic notes describing plaintiff's fibromyalgia as "stable" and on the fact that plaintiff had been encouraged to engage in moderate activity. She wrote:

> The undersigned administrative law judge has carefully considered the evidence in this case and has concluded that the claimant has been stable for a number of years including during the time when she was still working in the late 1990s. No treatment has been prescribed other than medication to help her sleep, and she has been told that she should engage in moderate activity.
>
> As for the opinion evidence, Dr. Bjarnason's evaluation [in] 2005 which indicated that the claimant could not even perform a significant range of sedentary work is not supported by his own records which show that her condition was stable and that she was not suffering from any condition which would be harmed by light to sedentary activity. He has based his ratings on

15

>the claimant's subjective complaints and upon the limitations that she has requested, not upon the severity of any medical condition.

AR 17. As plaintiff points out, the administrative law judge appears to have given short shrift to Bjarnason's clinic note from November 2004, in which he explains that plaintiff had pain in more areas throughout her body and that her condition had worsened over the past year, which counters any suggestion that plaintiff's fibromyalgia was "stable." Furthermore, the fact that other physicians who examined or treated plaintiff for other conditions used the word "stable" to describe her fibromyalgia says nothing about whether plaintiff can work: a person can have a condition that is both "stable" and disabling at the same time. Accord Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) ("hopeful remarks" in clinic notes indicating that claimant with bipolar disorder was doing "fairly well" or "quite well" insufficient to undermine treating psychiatrist's opinion that claimant could not work full time). Indeed, the record indicates that plaintiff's condition was stable largely because she had quit working and structured her activities at home to avoid exacerbating her symptoms.

 The clinic notes in the record "recommending" that plaintiff exercise four times a week for 30 minutes at a time are deserving of little weight. It is plain from the record that her doctors merely provided that standard advice, along with other recommended "wellness" practices, as a routine part of their annual physical examination and that they were not providing an opinion regarding plaintiff's physical capacity. In fact, the doctors recognized

16

that the standard 30-minutes-a-day recommendation was likely too optimistic for plaintiff, insofar as they encouraged plaintiff to exercise to the "best of her ability," even if only for 10 minutes at a time. In any case, even if plaintiff's doctors did think she could exercise 30 minutes a day, it is difficult to see how the administrative law judge equated a daily half-hour walk with the ability to perform sedentary to light work eight hours a day, five days a week. Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain.").

The only other reason the administrative law judge cited for discrediting plaintiff's subjective complaints was the lack of any prescribed treatment other than medication to help her sleep, which apparently suggested to the administrative law judge that plaintiff's pain was not that severe. However, the fact that Bjarnason did not prescribe additional medication for plaintiff could support another conclusion: that there was no additional medication or treatment that could alleviate plaintiff's pain or that did not have undesirable side effects. Godbey v. Apfel, 238 F.3d 803, 809 (7th Cir. 2000). In fact, plaintiff testified at the hearing that Bjarnason told her that he did not have any other treatment he could offer her. AR 359. The administrative law judge did not mention this testimony or consider Bjarnason's treatment notes, which indicate that ibuprofen and sleeping medication were an appropriate

17

treatment for plaintiff's condition.  I agree with plaintiff that by drawing an adverse inference about plaintiff's pain from her limited treatment regime, the administrative law judge overstepped his bounds and drew a medical conclusion.  Clifford, 227 F.3d at 870 (administrative law judge may not "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record").

In sum, the administrative law judge failed to build an accurate and logical bridge from the evidence to her conclusion that plaintiff's subjective complaints were not worthy of belief.  Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000) (administrative law judge must cite sound reasons for credibility determination that are supported by evidence in record).  It follows that the administrative law judge must also take another look at her decision to reject Bjarnason's opinion.  If she determines on remand that plaintiff's subjective complaints are credible, then she may also find that Bjarnason's opinion, which appeared to rest largely on plaintiff's description of her limitations, is also credible.

Finally, the administrative law judge should reconsider the evidence concerning plaintiff's mental limitations.  Plaintiff argues that the administrative law judge should have found her to have a severe mental impairment on the basis of the medical expert's testimony that she had "mild to moderate" limitations in the areas of social functioning and concentration, persistence and pace.  An impairment is considered "severe" when it significantly limits a person's mental abilities to perform basic work activities.  20 C.F.R. §

18

404.1520. Under the commissioner's procedure for evaluating mental impairments, a claimant will generally be found to have a severe impairment if she has moderate or greater limitations in at least two of the four broad categories of functioning deemed relevant to work. 20 C.F.R. § 404.1520a.

In her decision, the administrative law judge described the medical expert's testimony as follows:

> [The medical expert] thought that [plaintiff] would have no restrictions in her activities of daily living and mild to moderate restrictions in social functioning and in concentration. He indicated that for [sic] the condition was very mild and would be considered nonsevere. It would not have a significant effect on her ability to work.

AR 17. This is not an accurate description of the medical expert's testimony. The expert never said that plaintiff's condition was "very mild" or "nonsevere" or that it would not have a significant effect on her ability to work. Indeed, if read most favorably to plaintiff, his testimony that plaintiff would have "mild to moderate" limitations in two functional areas could support a finding that plaintiff's depression is severe. Further, an administrative law judge is required to consider the aggregate effect of all of plaintiff's impairments, including those impairments that are not severe in isolation. Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003). Although the evidence supporting plaintiff's allegation of mental limitations is sparse, the administrative law judge's mischaracterization of the medical

19

expert's testimony raises a question whether she conducted a competent evaluation of the evidence. Accordingly, the administrative law judge should take another look at it.

## ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Janet R. Hemminger's application for disability insurance benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 15th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge